HAGEDORN ET AL. v. BRINKSNEADER ET AL.

[No. 11,036. Filed December 1, 1921. Rehearing denied April 5, 1922.]

1. INJUNCTION.—*Action on Bond.—Damages.—Dissolution of Restraining Order.*—In an action on an injunction bond for damages, plaintiffs, who had been restrained from removing or taking possession of a quantity of wheat pending a determination of its ownership, could not recover for expenses incurred, or for loss of time, or for damage to the wheat after the restraining order was dissolved. p. 156.

2. INJUNCTION.—*Action on Bond.—Damages.—Evidence.*—In an action on an injunction bond for damages, plaintiffs, who had been restrained from removing or taking possession of a quantity of wheat pending a determination of its ownership, could not recover for damage to the wheat in the absence of evidence of the value of the wheat at the time when the restraining order was issued and of its value or condition when the order was dissolved. p. 156.

3. INJUNCTION.—*Action on Bond.—Evidence.—Plaintiff's Refusal to Draw Money Paid into Court by Receiver.—Admissibility.*—Where a receiver was appointed to thresh and sell a quantity of wheat pending a determination of its ownership in an action in which defendants had been restrained from removing the wheat, evidence as to whether one of such defendants had not refused to accept money paid into court by the receiver for use of defendants, on advice of counsel, *held* immaterial in defendants' action on the injunction bond to recover damages. p. 157.

4. INJUNCTION.—*Action on Bond.—Damages.—Recovery.*—In an action on an injunction bond to recover damages, plaintiffs, who had been restrained in the injunction proceeding from removing a quantity of wheat pending determination of its ownership, could not recover for damage to the wheat sustained after a receiver appointed to thresh and market the wheat had taken possession thereof, though the receiver did not qualify by giving bond or taking oath, where defendant did not object to the receiver taking possession and did not request that he be required to give bond or take oath. p. 158.

From Spencer Circuit Court; *Fred A. Heuring,* Judge.

Action by Ben Brinksneader and another against Henry T. Hagedorn and another. From a judgment for plaintiffs, the defendants appeal. *Reversed.*

*Cody & Corbin* and *Arch Stevenson,* for appellants.
*Herbert J. Patrick* and *Louis N. Savage,* for appellees.

McMAHAN, J.—On July 2, 1917, Noah D. Fuller, as guardian, filed his complaint against appellees, alleging that his wards were the owners of certain wheat grown upon certain real estate; that appellees without right had entered upon said real estate, had harvested said wheat and unless restrained would remove the same. Appellees were restrained from removing or taking possession of such wheat until further order of court, and the defendants therein were notified an application for a temporary injunction would be heard August 6, 1917. For the purpose of securing such restraining order Fuller gave bond to the approval of the court, with appellants as sureties. Notice of the granting this restraining order was served on appellees July 3, 1917, and they entered their appearance August 6. On August 25, the court continued the cause for term and appointed a receiver for said wheat, the order appointing such receiver reading in part as follows: "And in order to protect the rights of the parties, in the wheat in suit and to prevent loss thereof, and to secure ample justice to the parties, it is therefore ordered by the court that Henry Hagedorn be and he is hereby appointed receiver of this court to have the wheat in question threshed as soon as the same can be done and sell the same at once at the highest market price that can be obtained therefor and pay the proceeds at once into court, less the actual expense of threshing and expenses incurred." Nothing further appears to have been done until January 29, 1918, when the cause was submitted to the court for trial. February 1, 1918, the court entered a judgment dissolving the temporary restraining order and adjudging Fuller to be the owner of one-third of the wheat in question, that appellees owned two-thirds, and that each party pay their own costs and con-

tinuing the receivership in force for the purpose of threshing and dividing the wheat between the parties. The expense of threshing and dividing was to be paid by appellees. Said receiver was removed in August, 1918, and another appointed in his place. The receiver filed his report in October, 1919, showing that he had caused the wheat to be threshed; that after paying the expenses, including the cost of the receivership there was a balance of $79.55; that he had paid Fuller $26.51, and had paid $53.02 into court for the use of appellees. This report was approved and the receiver discharged.

June 16, 1919, appellees filed their complaint on said injunction bond for damages on account of loss and damages to the wheat and for time and expense of defending said action. There was a verdict and judgment for appellees for $425, from which this appeal is prosecuted. The only error assigned is that the court erred in overruling appellants' motion for a new trial, the specifications of which are that the verdict is not sustained by sufficient evidence, is contrary to law, that the damages are excessive, error in giving and refusing to give instructions and in the admission and exclusion of certain evidence.

In addition to the facts heretofore stated the evidence shows that appellee Brinksneader is the father-in-law of appellee Kleaving, and had no interest in the wheat. The only connection he had with the transaction was that his sons helped cut it. He joined in the defense of the injunction proceedings, employing and paying lawyers for that purpose. Appellee Kleaving rented the land upon which the wheat was grown from Fuller, and agreed to pay the cost of harvesting and threshing and to give Fuller one-third of the grain raised. The wheat remained in the field until the last of August, 1917, when it was put in Fuller's barn, where it remained until sometime in October, 1919, when it

was threshed, there being eighty-six bushels which was sold for $170. After the expenses incident to threshing and selling were paid there remained $79.55, one-third of which was paid to Fuller and two-thirds to the clerk for the use of appellee Kleaving. The evidence as to whether the wheat was damaged on account of rain before it was put in the barn and the loss suffered while in the barn on account of chickens, etc., is conflicting. There is evidence which would justify the jury in finding that part of it had been fed to Fuller's horses and that his chickens had damaged it to some extent and that the loss on account thereof would amount to about one-fourth of the whole of the wheat when first put in the barn. Appellees paid $65 for lawyers fees in defending the injunction suit and became obligated to pay an additional $25.

As we view this case it is not necessary for us to set out the evidence in detail or to enter upon a discussion of it further than to say there is no evidence as to the value of the services of the lawyers or whether their services were reasonably necessary in securing the dissolution of the temporary restraining order. In fact the restraining order was dissolved on final hearing and there is no evidence from which the court can find the value of the attorneys' fees which should be allowed in connection with the dissolution of the restraining order. The restraining order was dissolved February 1, 1918. It is clear that appellants would not be liable on the bond for any expenses, loss of time, or damage to the wheat after the restraining order was dissolved. There is no evidence as to the value or condition of the wheat at that time. The jurors should have been instructed that appellants were not liable for any loss or damages suffered by appellees subsequent to February 1, 1918, and the court on request doubtless would have so instructed them. The

attention of the jury does not seem to have been called to the fact that the receiver had paid the sum of $53.02 into court for the use of the appellees and that they were entitled to receive the same. The jury should have had its attention called to this fact and properly advised in relation thereto. Our attention has been called to no evidence of the value of the wheat in the field July 2, 1917, or as to its value or condition when the re-straining order was dissolved. Without some evidence upon these questions no correct result could be reached.

Appellee Kleaving testified as a witness on behalf of appellees. On cross-examination appellants inquired of him concerning the money which the receiver had

3. paid into court and asked if he had not refused to accept it on advice of his counsel. The court sustained an objection to the question. There was no error in this action of the court. This money had been paid into court for the use of appellees. It belonged to them and could be drawn out by them at any time. The fact that they had not drawn it out or their reason for not doing so did not affect the rights of any of the parties. Their reason for not drawing it out of the clerk's office was immaterial. Appellees at the time of the appointment of the receiver while not consent-ing of the appointment, made no objection to such ac-tion. They, in fact, recognized the authority of the court to make such appointment, by agreeing that the receiver so appointed should notify all the parties of the time when the wheat would be threshed so that they could all be present at that time as well as when the wheat was hauled away. They were present when the court dissolved the restraining order and made an order continuing the receivership in force for the purpose of threshing and dividing the wheat. Whether they were present when the court removed the first receiver and appointed the second receiver or when he filed his final

report is not disclosed. Appellee Kleaving testified that he knew Hagedorn, as receiver, had charge of the wheat and that Fuller did not have charge of it. Appellees without objection permitted the receiver to take possession of the wheat, to thresh it, haul it to market and dispose of it.

Under the facts we hold appellees are not in position to claim that the appellants are liable on their bond for any damage to the wheat after the order first appointing a receiver. Appellees call our attention to the fact that neither receiver qualified by giving bond or taking an oath as receiver. But they were present in court when the first appointment was made and knew that no order was made relative to giving a bond. Appellees had as much right and were as much interested as was Mr. Fuller in seeing that a bond was given, and as said in *Shulte* v. *Hoffman* (1857), 18 Tex. 678: "If he was not required to give bond, it was doubtless the fault of the defendant in not asking it."

The verdict is not sustained by the evidence and is contrary to law. The cause is therefore reversed with directions to sustain the motion for a new trial and for further proceedings consistent with this opinion.